## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ADAM DAHHANE,

                        Plaintiff,

v.

LINDA LORRAINE STANTON, also
known as LINDA LORRAINE
STANTON-DAHHANE; and BONNIE
LYNN STANTON,

                        Defendants.

Case No. 15-CV-1229 (PJS/BRT)

ORDER

---

This matter is before the Court on the objection of plaintiff Adam Dahhane to the Report and Recommendation ("R&R") issued by Magistrate Judge Jeffrey J. Keyes on March 16, 2016.[1]   The R&R recommends denying Dahhane's motion for partial summary judgment, denying defendant Linda Stanton's motion for summary judgment, and granting in part defendant Bonnie Stanton's motion for summary judgment.  The Court has conducted a de novo review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Based on that review, the Court agrees with most—but not all—of Judge Keyes's analysis, and adopts the R&R to the extent that it is consistent with this order.

---

[1]Judge Keyes subsequently retired, and this case was reassigned to Magistrate Judge Becky R. Thorson.

The Court will assume familiarity with the R&R, including its description of the facts.[2]  *See* R&R 2-7, ECF No. 99.  To briefly recap:  Dahhane and Linda[3] met through an online dating website.  Linda traveled to Morocco to meet Dahhane in person—and, after the couple spent two weeks together, Linda returned to the United States and sought a fiancé visa for Dahhane.  The visa was issued.  Dahhane moved to the United States and began living with Linda and her son from a previous relationship.  Dahhane and Linda married in September 2001.

A month later, Dahhane filed an application to change his immigration status to permanent resident.  Because Dahhane was deemed likely to become a public charge, he was required to have a sponsor, and that sponsor was required to file a Form I-864 ("Affidavit of Support Under Section 213A of the Act").  In the Form I-864, a sponsor commits "to provide the sponsored immigrant(s) whatever support is necessary to maintain the sponsored immigrant(s) at an income that is at least 125 percent of the Federal poverty guidelines."  ECF No. 114-1 at 9.  Linda and Bonnie (Linda's mother) each signed a Form I-864 agreeing to sponsor Dahhane; Bonnie was required to submit

---

[2]Dahhane objects to some of the recitation of facts in the R&R because, he argues, the R&R improperly relies on deficient affidavits.  Dahhane is incorrect; as the Court explains below, defendants' affidavits are not deficient.

[3]The Court refers to Linda Stanton and Bonnie Stanton by their first names to avoid confusion.

a Form I-864 because Linda did not have sufficient resources of her own to qualify as a sponsor.  (Bonnie was employed as a social worker.)

The purpose of requiring a sponsor to submit a Form I-864 before granting permanent residency to an immigrant such as Dahhane is to protect the public—that is, to ensure that the immigrant will not need to be supported by the taxpayers.  But courts have been clear that Form I-864 creates an enforceable contract between the sponsor and the immigrant.  Thus, if the sponsor fails to support the immigrant at an income that is at least 125 percent of the federal poverty guidelines, the immigrant can sue the sponsor and recover the deficiency—even if the immigrant never has received public assistance.

Dahhane and Linda had a daughter in 2002.  Following the birth of his daughter, Dahhane left his job at a grocery store and started an online business selling items on eBay.  Dahhane stopped working altogether in 2008.  In November of that year, Linda and Dahhane separated, and they divorced in 2013.  Following the separation, Linda worked for a time at a grocery store, but after suffering a work-related injury in 2011, she stopped working at the grocery store in 2012.  She presently experiences significant financial problems as she struggles to support herself, her son, and her daughter (who has been diagnosed with autism and psychosis).  It does not appear that Dahhane provides any financial support to his disabled daughter.

Dahhane brought this lawsuit against Linda and Bonnie claiming that they failed to support him to the extent required by Form I-864.  Specifically, Dahhane claims that Bonnie failed to support him sufficiently from 2001 to 2007, and that both Linda and Bonnie failed to support him sufficiently from 2008 to 2011.  Dahhane now moves for summary judgment on his claims for 2008 to 2011, while Linda and Bonnie move for summary judgment on all of Dahhane's claims.

The R&R recommends granting summary judgment to Bonnie for the years 2001 to 2006, but otherwise denying the summary-judgment motions of the parties.  Dahhane concedes that Bonnie is entitled to summary judgment for 2005, *see* Pl. Obj. 15 ¶ 7, but he objects to the R&R insofar as it recommends granting Bonnie's motion for any other years and insofar as it recommends denying his motion for 2008 to 2011.[4]  Dahhane also objects to Judge Keyes's rulings on a number of procedural matters.

## I.  PROCEDURAL OBJECTIONS

Dahhane makes a number of procedural objections:

First, Dahhane objects—over and over again—to the fact that Judge Keyes considered the affidavits submitted by defendants.  Dahhane argues that the affidavits

---

[4]Dahhane objects that Judge Keyes "erred by not ruling on [liability]."  Pl. Obj. 2. Dahhane appears to believe that the issue of defendants' liability is somehow distinct from the issue of whether defendants breached their contracts to support him.  But these two issues are identical; if defendants breached the contracts, they are liable, and if they did not breach the contracts, they are not liable.

should have been disregarded because they failed to meet the requirements of 28 U.S.C.

§ 1746.  Dahhane is mistaken.  Section 1746 imposes certain requirements on unsworn

declarations that are submitted in lieu of sworn affidavits; but both Linda and Bonnie

submitted sworn affidavits, and thus § 1746 is irrelevant.  A sworn affidavit is valid if it

is "signed, attested before a notary public, and bearing a notary seal." *Jenkins v. Winter*,

540 F.3d 742, 747 (8th Cir. 2008).  Linda's and Bonnie's affidavits meet these

requirements, and thus Judge Keyes did not err in relying on them.

Second, Dahhane appears to argue that, because he disputes some of the facts

contained in Linda's and Bonnie's summary-judgment brief, no part of their summary-

judgment motion can be granted.  Pl. Obj. 2 (citing Pl. Br. on Mot. to Strike 10, ECF

No. 61).  Dahhane cites in support of his argument the rules of procedure of the Office

of Hearings and Appeals of the Small Business Administration.  Pl. Br. on Mot. to

Strike 10 (citing 13 C.F.R. § 134.212(a)(1)).  But the rules of that agency do not bind this

Court.  Rather, whether a summary-judgment motion can be granted by this Court is

controlled by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a dispute

of fact precludes the granting of summary judgment only if the dispute is "genuine"

and the fact is "material."  Fed. R. Civ. P. 56(a).

Third, Dahhane argues that Judge Keyes erred by considering defendants'

motion for summary judgment even though they had not filed a notice of hearing on

that motion. Dahhane is correct that defendants committed a technical violation of

Local Rule 7.1(c)(1)(A)(ii), but that violation did not prejudice Dahhane in any way.

Defendants' motion, memorandum in support of their motion, and supporting

affidavits and exhibits were served on Dahhane almost two months before the

January 13, 2016 hearing, and Dahhane was aware of and participated in that hearing.

Under the circumstances, Judge Keyes's decision to allow defendants to argue their

motion was not clearly erroneous or contrary to law. *See Reyher v. Champion Int'l Corp.*,

975 F.2d 483, 489 (8th Cir. 1992) ("application of local rules is a matter peculiarly within

the district court's province"); *Braxton v. Bi-State Dev. Agency*, 728 F.2d 1105, 1107 (8th

Cir. 1984) ("It is for the district court to determine what departures from its rules may

be overlooked.").

Fourth, Dahhane objects to Judge Keyes's denial of his motion for a protective

order. Dahhane appears to request two things: first, that the Court enforce Federal

Rule of Civil Procedure 5.2(a), which requires parties to redact certain private

information from their court filings; and second, that the Court issue a protective order

requiring the parties to redact his address (and certain other information). As to

Dahhane's first request, the Court has already ordered the parties to make the necessary

redactions, and it appears that the parties are now in compliance with Rule 5.2(a).

Dahhane's motion is therefore moot. As to Dahhane's second request, Dahhane has not

provided any basis on which the Court can find that Judge Keyes's decision to deny his

motion for a protective order was clearly erroneous or contrary to law.

Finally, Dahhane objects to Judge Keyes's decision to deny Dahhane's motion to

extend the deadline for filing dispositive motions.  Dahhane filed the motion to extend

time on February 1, 2016, which was the last day for filing dispositive motions.  *See* ECF

No. 28 at 3.  By the time that Dahhane filed his motion to extend, Judge Keyes had

already held a hearing on the parties' summary-judgment motions and over four

months had passed since the close of fact discovery.  Because Dahhane had ample time

to engage in discovery and file dispositive motions, the Court finds that Judge Keyes's

decision to deny Dahhane's motion to extend the deadline for filing dispositive motions

was neither clearly erroneous nor contrary to law.

## II.  SUBSTANTIVE OBJECTIONS

To determine whether defendants met their obligation to support Dahhane in a

given year, the Court must identify how much was 125 percent of the federal poverty

level for that year.  That, in turn, requires the Court to determine the size of Dahhane's

household, as the federal poverty level differs depending on the size of the household.

After determining how much was 125 percent of the federal poverty level for a given

year, the Court must determine how much income was received by Dahhane and

members of his household during that year.  Dahhane objects to some of Judge Keyes's

conclusions about the size of Dahhane's household for particular years and about what

should and should not be counted as income to Dahhane and members of his

household.

*A.  Household Size*

Dahhane objects to Judge Keyes's finding that his household size was three

between 2003 and 2008.  For those years, Judge Keyes deemed the household to include

Dahhane, Linda, and their daughter; Judge Keyes excluded Linda's son (even though he

lived with Dahhane and Linda), because the son's father claimed him as a dependent.

Dahhane correctly points out that, in their answers to his complaint, Linda and

Bonnie admitted that the household size was four (not three) during the years in

question.  *See* Answers ¶ 2, ECF Nos. 9 and 10; Compl. ¶ 23, ECF No. 1.  The Eighth

Circuit has made clear that such an admission in a pleading is binding, unless the

admission is later withdrawn or amended; this is true even when the admitting party

later submits evidence contradicting its admission.  *See Mo. Hous. Dev. Comm'n v. Brice*,

919 F.2d 1306, 1314-15 (8th Cir. 1990).  The Court therefore agrees with Dahhane that the

size of his household must be deemed to be four during the years 2003 to 2008.

*B.  Income*

When calculating the income at which Dahhane's household was maintained,

Judge Keyes included (1) Bonnie's contributions to pay household bills; (2) $3,000 that

-8-

Dahhane brought with him when he immigrated from Morocco; (3) child-support payments received from the father of Linda's son; (4) tax refunds; and (5) earned income. Dahhane argues that only earned income should count. He is incorrect.

### 1. Bonnie's contributions

Dahhane makes the absurd argument that, in deciding whether Bonnie met her obligation to support him, the Court should ignore the money that Bonnie gave him because that money was a gift and therefore was not taxable. In other words, Dahhane argues that, if Bonnie had given him a gift of $1 million in 2003, he could still sue her for failing to support him at 125 percent of the federal poverty level during that year.

Form I-864 obligates a sponsor "to provide the sponsored immigrant(s) whatever support is necessary to maintain the sponsored immigrant(s) at an *income* that is at least 125 percent of the Federal poverty guidelines." Pl. Ex. 1 at 8 (emphasis added). Dahhane argues that, in deciding what is "income" for purposes of Form I-864, the Court should apply the definition of income in 8 C.F.R. § 213a.1, which is the regulation that implements the affidavit-of-support statute. That regulation defines income the same way that income is defined "for purposes of the individual's U.S. Federal income tax liability." *Id.* For federal income-tax purposes, gifts generally do not count as income, 26 U.S.C. § 102(a), so Dahhane argues that gifts to the immigrant—whether from the sponsor or from someone else—should also not count as income.

The problem for Dahhane is that 8 C.F.R. § 213a.1 provides definitions for use in determining whether someone is eligible to *sponsor* an immigrant; the regulation has nothing to do with calculating whether an immigrant has been supported at 125 percent of the federal poverty level. *See Erler v. Erler*, No. 14-15362, 2016 WL 3192651, at *3 (9th Cir. June 8, 2016); *Stump v. Stump*, No. 1:04-CV-253-TS, 2005 WL 2757329, at *5 (N.D. Ind. Oct. 25, 2005). And it is obvious why, in deciding whether someone is qualified to take on the long-term obligation of sponsoring an immigrant, the government would ignore one-time gifts—while, in deciding how much money an immigrant has to spend on food, shelter, and clothing in a particular year, the government would count gifts that the immigrant received during that year.

Form I-864 merely requires the sponsor to support the immigrant; it does not require the sponsor to pay the immigrant a taxable wage. And if anything counts towards a sponsor's support obligation, surely it is money that the sponsor gives to the immigrant or pays someone else on the immigrant's behalf. The Court therefore agrees with Judge Keyes that Bonnie's contributions to help pay the bills of the Dahhane household count as income to that household.

### 2.  $3,000 from Morocco

The Court also agrees with Judge Keyes that the $3,000 that Dahhane brought with him when he immigrated from Morocco counts towards his 2001 income.

Form I-864 makes clear that a "sponsored immigrant's assets may also be used in

support of [sponsors'] ability to maintain income at or above 125 percent of the poverty

line *if* the assets [were] available in the United States for the support of the sponsored

immigrant(s) and [could] readily be converted into cash within 1 year."  Pl. Ex. 1 at 8.

The $3,000 that Dahhane brought with him from Morocco was cash, and it was

available for his support.

### 3.   Child-Support Payments

The Court agrees with Judge Keyes that child-support payments received from

the father of Linda's son count toward household income.  Dahhane cannot have it both

ways; he cannot argue that the son should count when calculating the size of the

household, but that money received because the son is part of the household should not

count.  The presence of the son increases household expenses, which is why the poverty

level for a household of four is higher than the poverty level for a household of three.

But child-support payments received from the son's father offset that increase in

household expenses, and thus should be counted as part of the household's income.

### 4.   Tax Refunds

The Court agrees with Dahhane that tax refunds do not count as income.  A tax

refund is merely the return of the recipient's money.  To count income once when it is

received and a second time when it is refunded (after being paid to the government as

taxes) would be double counting.  *See Skorychenko v. Tompkins*, No. 08-CV-626-BBC, 2009

WL 3837340, at *2 (W.D. Wis. Nov. 16, 2009).

*C.  Calculations*

Having identified the household size for each of the relevant years—and having

identified what should and should not count as income to the household—the Court

now turns to whether, with respect to each of the years in question, the income of the

Dahhane household exceeded 125 percent of the federal poverty level.

To begin with, the Court agrees with Judge Keyes as to the years 2001, 2005,[5]

2008, 2009, 2010, and 2011.  The Court therefore adopts the R&R insofar as it

recommends that summary judgment be entered for Bonnie with respect to the years

2001 and 2005 and that no party receive summary judgment with respect to the years

2008, 2009, 2010, and 2011.

For the remaining years at issue, the Court's conclusions are as follows:

1.  2002

In 2002, the household size was four, and 125 percent of the federal poverty level

for a family of four was $22,625.  Annual Update of the HHS Poverty Guidelines, 67

---

[5]Dahhane does not object to the R&R's recommendation to grant Bonnie
summary judgment as to 2005.  Pl. Obj. 15.  In any event, the 2005 household income of
$57,315.52 far exceeded 125 percent of the federal poverty level, which was $24,187.50.
*See* Linda Aff. ¶ 25, ECF No. 125; Annual Update of the HHS Poverty Guidelines, 70
Fed. Reg. 8373-02 (Feb. 18, 2005).

Fed. Reg. 6931-02 (Feb. 14, 2002). The household income was $22,696.74, consisting of

$16,258 in earned income, $3,688.74 in child support, and $2,750 received from Bonnie

to pay household bills. Linda Aff. ¶ 18.[6] The unrebutted evidence before the Court

shows that the household income exceeded 125 percent of the federal poverty level for a

family of four, and therefore the Court grants summary judgment to Bonnie as to 2002.

2. 2003

In 2003, the household size was four, and 125 percent of the federal poverty level

for a family of four was $23,000. Annual Update of the HHS Poverty Guidelines, 68

Fed. Reg. 6456-03 (Feb. 7, 2003). The household income was $20,323.80, consisting of

$15,152 in earned income, $4,737.60 in child support, and $434.20[7] from Bonnie to pay

household bills. Linda Aff. ¶ 19. The evidence before the Court does not show that the

household income was at least 125 percent of the federal poverty level, and therefore

---

[6]The R&R draws household-income figures from the tax returns that defendants have submitted as evidence. The Court may not consider these tax returns at the summary-judgment stage, though, because they are inadmissible hearsay. *See* Fed. R. Civ. P. 56(c); *Blodgett v. Comm'r*, 394 F.3d 1030, 1040 (8th Cir. 2005). Instead, the Court considers Linda's affidavit, which also provides the household-income information. *See* Fed. R. Civ. P. 56(c).

[7]Linda's affidavit says that Bonnie paid $434.20 in 2003. Linda Aff. ¶ 19. Bonnie's affidavit says that Bonnie paid $434.26 in 2003. Bonnie Aff. ¶ 19, ECF No. 124. Viewing the evidence in the light most favorable to Dahhane, the Court uses the lower amount.

the Court cannot grant summary judgment to Bonnie as to 2003.  (Dahhane has not moved for summary judgment as to 2003.)

### 3.  2004

In 2004, the household size was four, and 125 percent of the federal poverty level for a family of four was $23,562.50.  Annual Update of the HHS Poverty Guidelines, 69 Fed. Reg. 7336 (Feb. 13, 2004).  The household income was $32,709.79, consisting of $22,933 in earned income and $9,776.79 in child support.  Linda Aff. ¶ 20.  The unrebutted evidence before the Court shows that the household income exceeded 125 percent of the federal poverty level for a family of four, and therefore the Court grants summary judgment to Bonnie as to 2004.

### 4.  2006

In 2006, the household size was four, and 125 percent of the federal poverty level for a family of four was $25,000.  Annual Update of the HHS Poverty Guidelines, 71 Fed. Reg. 3848-01 (Jan. 24, 2006).  The household income was $68,225.57, consisting of $57,852 in earned income and $10,373.57 in child support.  Linda Aff. ¶ 25.  The unrebutted evidence before the Court shows that the household income exceeded 125 percent of the federal poverty level for a family of four, and therefore the Court grants summary judgment to Bonnie as to 2006.

5.  2007

In 2007, the household size was four, and 125 percent of the federal poverty level

for a family of four was $25,812.50.  Annual Update of the HHS Poverty Guidelines, 72

Fed. Reg. 3147-01 (Jan. 24, 2007).  The household income was $21,510.39, consisting of

$11,792 in earned income, $6,218.39 in child support, and $3,500 received from Bonnie

to pay household bills.  Linda Aff. ¶ 25.  The evidence before the Court does not show

that the household income was at least 125 percent of the federal poverty level, and

therefore the Court cannot grant summary judgment to Bonnie as to 2007.  (Dahhane

has not moved for summary judgment as to 2007.)

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

the Court SUSTAINS IN PART AND OVERRULES IN PART plaintiff's objection [ECF

No. 105] and ADOPTS IN PART the R&R [ECF No. 99].  IT IS HEREBY ORDERED

THAT:

1.     Plaintiff's motion for partial summary judgment [ECF No. 42] is DENIED.

2.     Defendants' motion for summary judgment [ECF No. 52] is GRANTED IN

       PART and DENIED IN PART as follows:

       a.     Defendants' motion for summary judgment is GRANTED as to

              plaintiff's claims for 2001, 2002, 2004, 2005, and 2006.

-15-

b.    Defendants' motion for summary judgment is DENIED as to

plaintiff's claims for 2003, 2007, 2008, 2009, 2010, and 2011, and in

all other respects.

3.    Defendants' motion for attorney's fees [ECF No. 123 at 30-33] is DENIED

WITHOUT PREJUDICE.

4.    Plaintiff's motion for a protective order [ECF No. 72] is DENIED.

5.    Plaintiff's motion to extend the deadline for filing dispositive motions

[ECF No. 80] is DENIED.

Dated:  August 12, 2016                  s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge